UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CHRISTOPHER DAVIS,

    Defendant.

/

Case No. 17-cr-20212

UNITED STATES DISTRICT COURT
JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA [#69]**

**I. INTRODUCTION**

On February 8, 2018, Defendant Christopher Davis pled guilty to Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. § 841(a)(1). Dkt. No. 54. Because Defendant had a prior state drug conviction, he faced a statutory maximum sentence of 30 years and a sentencing guidelines range of 188 to 235 months. However, under his Rule 11(c)(1)(C) plea agreement, Defendant and the Government stipulated that the appropriate sentence in this case would be 228 months. *See id.* at p. 4 (Pg. ID 147). Defendant still awaits sentencing.

On December 21, 2018, Congress passed the First Step Act, which redefined what constituted a prior drug offense. Under the Act, Defendant's state conviction

no longer qualifies as a "serious drug offense." Consequently, the statutory maximum penalty for his federal conviction is now 20 years and his sentencing guidelines range is 151 to 188 months. Defendant has filed the instant Motion to withdraw his guilty plea in light of these favorable changes.

Present before the Court is Defendant's Motion to Withdraw Guilty Plea. Dkt. No. 69. A hearing on the Motion was held on September 12, 2019. For the reasons set forth below, the Court will DENY the Motion [#69].

## II. DISCUSSION

Defendant argues that because his plea agreement was based upon sentencing consequences which have subsequently changed, such that the agreement can no longer be performed, he has provided a fair and just reason to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). *See* Dkt. No. 69, p. 4 (Pg. ID 223). The Court will disagree.

"It is well settled that the withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court." *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987) (quoting *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir. 1978)). To prevail on such a motion, the defendant must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The Sixth Circuit has identified a non-exclusive list of factors

that courts should consider when determining whether a defendant has met his burden:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Ellis*, 470 F.3d 275, 281 (6th Cir. 2006). Importantly, no single factor controls. *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008). Rather, "[t]he relevance of each factor will vary according to the 'circumstances surrounding the original entrance of the plea as well as the motion to withdraw.'" *Id.* (quoting *United States v. Triplett*, 828 F.2d 1195, 1197 (6th Cir. 1987)).

Here, none of the *Ellis* factors weigh in favor of relief. *See* 470 F.3d at 281. With respect to the first factor -- the amount of time between the plea and the motion to withdraw -- Defendant waited over fourteen months to file the instant Motion. *See* Dkt. No. 54; Dkt. No. 69. Even considering only the time between the passage of the First Step Act and now, this still amounts to a four-month gap. The Sixth Circuit has affirmed decisions to deny motions to withdraw guilty pleas on the basis of far shorter delays. *See, e.g.*, *United States v. Durham*, 178 F.3d 796, 799 (6th Cir. 1999) (77-day delay); *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (67-

day delay); *United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (55-day delay); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (5-week delay).

Regarding the second factor -- a valid reason for failing to move for withdrawal earlier -- Defendant suggests that the delay was caused by the uncertainty surrounding the First Step Act. Undoubtedly, this justifies some of Defendant's tardiness. But this does not excuse a four-month delay. *See United States v. Benton*, 639 F.3d 723, 727-28 (6th Cir. 2011) ("Though we recognize that defense counsel may have had to contend with competing demands on her time and resources, we cannot excuse a delay of more than three months in this case. Once Benton and his counsel became aware of new developments that might be relevant to his case, it was incumbent upon them to take action within a reasonable period of time. Therefore, while Benton may have had a valid reason for not filing the motion immediately upon learning of the Supreme Court's decision in *Gant*, he does not present a valid excuse for the extended length of the delay.").

The third factor -- whether the defendant has asserted or maintained his innocence -- also weighs against relief. Here, Defendant has conceded his guilt. *See United States v. Hasan*, No. 1:15CR188, 2016 WL 3854460, at *4 (N.D. Ohio July 15, 2016) ("The fact that he has not maintained his innocence, and has, in fact, acknowledged his guilt, also weighs against a finding of a fair and just reason to support the withdrawal of a guilty plea.").

The fourth factor asks the Court to consider the circumstances underlying the entry of the guilty plea. In the present case, not only did the Court advise Defendant of his constitutional rights, but Defendant acknowledged that he was entering his guilty plea both knowingly and voluntarily. *See* Dkt. No. 68. Consequently, this factor will weigh against relief.

Relevant to the fifth factor -- the defendant's nature and background -- Defendant indicated that he was twenty-one years old at the time of his plea hearing and that he had an eleventh-grade education. *See id.* Further, the Court made specific findings that Defendant was fully competent and capable of entering an informed plea, and also, that he was aware of the nature of the charges and the consequences of his plea. *See id.* This factor will therefore weigh against relief.

The Sixth factor -- the degree to which the defendant has had prior experience with the criminal justice system -- will likewise weigh against relief. Defendant has been charged with and has plead guilty to felony crimes on multiple occasions. *See* Dkt. No. 71, pp. 16-17 (Pg. ID 245-46). This experience tends to show that he is intimately familiar with the criminal justice system and was aware of the ramifications of his guilty plea. *See Benton*, 639 F.3d at 728 ("Benton's present positive endeavors do not erase his prior experience with the criminal justice system, which tends to show that Benton was intimately familiar with the system and was aware of the ramifications of entering his guilty plea.").

Finally, the seventh factor -- potential prejudice to the government -- weighs heavily against relief. The Government asserts that in reliance on Defendant's guilty plea, the Bureau of Alcohol, Tobacco, Firearms, and Explosives destroyed the cocaine evidence related to this case. *See* Dkt. No. 71, p. 19 (Pg. ID 248). Thus, to permit Defendant to withdraw his guilty plea at this juncture could jeopardize the Government's ability to secure a conviction. *See United States v. Jerry*, 487 F.2d 600, 611 (3d Cir. 1973) (holding the denial of a motion to withdraw guilty plea was not an abuse of discretion in view of the fact that the physical evidence was no longer available to the prosecution).

Notwithstanding the above, Defendant maintains that the Court should permit him to withdraw his guilty plea based on a contract principle known as frustration of purpose. *See Ellis*, 470 F.3d at 280 ("A plea bargain . . . is contractual in nature and subject to contract-law standards."). He cites to the Tenth Circuit's decision in *United States v. Bunner*, where the court held that if an unforeseeable event renders one party's performance under a plea agreement worthless to the other, then the aggrieved party will be discharged from their obligations:

> Defendant and the government entered the plea agreement to avoid the uncertainty of a jury verdict. Defendant hoped to subvert the risk that a jury would convict him on all four counts which he was charged. The government, on the other hand, entered the agreement to ensure that Defendant served time for violating § 924(c). A basic assumption underlying the parties' purposes was their belief that the conduct Defendant pled guilty to amounted to a violation of § 924(c). Absent this assumption, neither party would have entered into the December 16, 1994 plea agreement. Indeed, under Fed. R.

> Crim. Proc. 11(f), the district court could not enter judgment on Defendant's plea absent a finding that a factual basis supported the § 924(c) violation.
>
> Subsequent to entering the agreement, an intervening change in the law destroyed the factual basis supporting Defendant's conviction. At this point, Defendant had two options. He could perform under the agreement as though *Bailey* were never decided or he could move to vacate his sentence pursuant to § 2255 on the ground that he pled guilty to something that wasn't a crime. On his own volition, Defendant chose the latter and the district court vacated his sentence.

134 F.3d 1000, 1004-05 (10th Cir. 1998). The Tenth Circuit went on to explain that because the district court's decision relieved defendant of his obligations under the plea agreement, "[t]his resulted in the underlying purpose of the agreement being frustrated and the basis of the government's bargain being destroyed." *Id.* at 1005. However, the court cautioned that in order for the frustration of purpose doctrine to apply, "the frustration must be such that the intervening event cannot fairly be regarded as within the risks the frustrated party assumed under the contract." *Id.* at 1004.

Here, Defendant and the Government entered into the plea agreement, in large part, to avoid the uncertainty of a jury verdict and to guarantee a fixed sentence. But unlike in *Bunner*, both parties can still receive what they bargained for under the agreement. *See id.* at 1004-05. Indeed, nothing in the First Step Act exonerates Defendant of his underlying offense; and although the stipulated sentence now falls outside of Defendant's guidelines range, the Court can still impose that agreed upon sentence. *See* U.S.S.G. § 6B1.2(c) ("In the case of a plea agreement that includes a

specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that: (1) the agreed sentence is within the applicable guideline range; or (2) (A) the agreed sentence is outside the applicable guideline range for justifiable reasons; and (B) those reasons are set forth with specificity in the statement of reasons form.").

While the Court recognizes that Defendant's sentencing guidelines have changed since he entered his guilty plea, this is a risk that both parties assumed when they entered into the agreement. *See Brady v. United States*, 397 U.S. 742, 757 (1970) ("We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions."); *United States v. Agurs*, No. 12-100, 2014 WL 3735584, at *13 (W.D. Penn. July 28, 2014) ("[I]f the Court allowed Defendant to withdraw his plea under these circumstances, it would essentially have to allow any defendant who had an agreed-upon sentence with the Government under Rule 11(c)(1)(C) to withdraw a plea if it turned out that he or she was facing more or less time than expected."); *see also United States v. Bradley*, 400 F.3d 459, 464 (6th Cir. 2005) ("The salient point is that a plea agreement allocates risk between the two parties as they see fit. If courts

disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table. . . ."); *United States v. Porter*, 405 F.3d 1136, 1145 (10th Cir. 2005) ("To allow defendants or the government to routinely invalidate plea agreements based on subsequent changes in the law would decrease the prospects of reaching an agreement in the first place, an undesirable outcome given the importance of plea bargaining to the criminal justice system."). Defendant presents no authority suggesting that a favorable change in his sentencing guidelines, alone, requires the Court to grant the requested relief. Moreover, considering the Government has offered to amend the plea agreement to reflect a sentence within Defendant's lowered guidelines range, his argument holds even less weight. *See* Dkt. No. 71, p. 12 (Pg. ID 241). Accordingly, the Court will Deny Defendant's Motion to Withdraw Guilty Plea.

### III. CONCLUSION

For the reasons stated herein, the Court will DENY Defendant's Motion to Withdraw Guilty Plea [#69].

IT IS SO ORDERED.


Dated: September 12, 2019

                                            s/Gershwin A. Drain
                                            HON. GERSHWIN A. DRAIN
                                            United States District Court Judge

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 12, 2019, by electronic and/or ordinary mail.

                                         s/Teresa McGovern
                                         Case Manager